UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHAUN KIDD                          )
                                    )        No. 1:12-cv-358/1:10-cr-114
v.                                  )        *Judge Curtis L. Collier*
                                    )
UNITED STATES OF AMERICA            )

## MEMORANDUM

Defendant Shaun Kidd ("Kidd") has filed a *pro se* motion for post-conviction relief pursuant

to 28 U.S.C. § 2255 (Criminal Court File No. 40).[1]  Kidd pleaded guilty to an information charging

him with aiding and abetting embezzlement by a bank employee, in violation of 18 U.S.C. §§ 2 and

656 (Criminal Court File No. 7, Minute Entry of Guilty Plea) and was sentenced to 60 months

imprisonment (Criminal Court File No. 21, Judgment).

Also before the Court is an incomplete application to proceed *in forma pauperis* (Criminal

Court File No. 41).  A motion filed under 28 U.S.C. § 2255 is not a civil action.  Consequently, an

application to proceed *in forma pauperis* is unnecessary since there is no filing fee in a § 2255

proceeding. *See* L.R. 9.3(b).  Accordingly, the application to proceed *in forma pauperis* is **DENIED**

because there is no matter pending before the Court to provide a basis for granting such an

application (Criminal Court File No. 41).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District

Courts requires a judge to *sua sponte* dismiss a § 2255 petition without ordering a responsive

pleading "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior

proceedings that the moving party is not entitled to relief[.]"  Upon initial review of the motion

---

[1]      Each document will be identified by the Court File Number assigned to it in the
underlying criminal case.

pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, it plainly appears Kidd is not entitled to relief and summary dismissal is warranted. Kidd's claims are confusingly pled and difficult to decipher, and his § 2255 motion fails to provide any factual support for his claims in violation of Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Therefore, the government will not be required to file a reply.

After reviewing the record, the Court concludes Kidd's § 2255 motion will be **DENIED** as the record conclusively shows Kidd is not entitled to any relief under 28 U.S.C. § 2255 (Criminal Court File No.  40).

## I.  PROCEDURAL BACKGROUND

On August 10, 2010, the United States Government filed a One Count Information charging Kidd with causing and inducing Jacinda James, an employee of Sun Trust Bank, a federally insured financial institution, with the intent to defraud the bank, to knowingly and intentionally without authorization, withdraw $40,000.00 from the account of customer M.S. and convert it unlawfully to Kidd's own use, all in violation of Title 18 U.S.C. §§ 2 and 656. (Criminal Court File No. 1).

On September 27, 2010, Kidd pleaded guilty to the One Count Information and agreed to the factual basis without a plea agreement (Criminal Court File Nos. 2-Agreed Factual Basis; 7-Plea Hearing).  The statutory penalties for this offense are up to 30 years in prison and a fine of up to $1,000,000.00.  Title 18 U.S.C. § 656.  The Presentence Investigation Report ("PSI") reflects Kidd's total offense level was 13, his criminal history category was VI (based on 43 criminal history points), and the guideline range for imprisonment was 33 to 41 months (PSI,  91).  Finding that the seriousness of his 43 criminal history points was understated by the sentencing guidelines, the Court

2

found that departure pursuant to Section 4A1.3 was warranted and sentenced Kidd to 60 months imprisonment, five years of supervised release, and ordered him to pay restitution in the amount of $75,850.49 (Criminal Court File No. 31, Judgment Proceeding Transcript).

Kidd pursued a direct appeal (Criminal Court File No. 24). The Court of Appeals for the Sixth Circuit affirmed the judgment (Criminal Court File No. 36), and certiorari was denied on October 1, 2012 (Criminal Court File No. 39). On or about October 29, 2012, Kidd timely filed the instant § 2255 motion (Criminal Court File No. 40).

## II.    STANDARD OF REVIEW

This Court must vacate and set aside a sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b).

When the defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley,* 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted) (§ 2254 case);

3

*Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, a § 2255 motion may not be used to litigate the issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Alternatively, a defaulted claim may be raised if a defendant shows that he is actually innocent of the crime. *See Bousley*, 523 U.S. at 622.

## III. FACTS

The undisputed facts underlying Kidd's offenses are summarized in the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 6.    This case originated on February 20, 2009, when eBay/PayPal Fraud Investigator, Will Kong, contacted the Chattanooga Secret Service Field Office. He reported that PayPal was defrauded by two individuals that have PayPal accounts with addresses listed in Chattanooga, Tennessee. Investigator Kong stated PayPal records show that an account was set up through PayPal using a bank account belonging to SunTrust Bank customer

4

[A.D.]. Investigator Kong stated he discovered another SunTrust Bank customer, [M.S.'s], account was also compromised. He stated funds were transferred out of [A.D.'s and M.S.'s] accounts and deposited into Shaun Kidd's and Jacinda James' PayPal accounts. Investigator Kong stated that he estimated PayPal is expected to be at a total loss of $75,850.49.

7.      Further investigation by Agent Akers revealed that the defendant, Shaun Kidd, established a PayPal account on August 20, 2008. A total of $65,000 was deposited into Kidd's PayPal account between September 6, 2008, and November 22, 2008, from a SunTrust Bank account number ending in ____. This SunTrust Bank account number ending in ____ was later determined to belong to [M.S.]. Kidd's PayPal account records show $7,240 was sent from his PayPal account to a PayPal account in the name Jacinda James from October 23, 2008, to November 8, 2008. Kidd's PayPal account records also reflect that $52,750 was deposited into an account ending in [_ _ _ _] at Church Koinonia Federal Credit Union. This account was later determined to belong to Shaun Kidd. $9,702 of the funds were withdrawn from Kidd's account through ATM withdraws. PayPal records reflect that $2,510 was withdrawn from Kidd's account and deposited in an account at Meta-Bank and $2,500 was deposited into Centennial Bank.

8.      Jacinda James established a PayPal account on October 17, 2005. Between October 23, 2008, and November 08, 2008, James received $7,200 from Shaun Kidd's PayPal account. She received $13,100 from [A.D.'s] PayPal account between January 28, 2009, and February 8, 2009. James was also issued a PayPal Debit Card and records show a total of $17,990 in transactions were conducted using the debit card with $9,989 of the transactions being ATM withdrawals.

9.      The case agent met with SunTrust Bank Investigator Mitch Weber on March 26, 2009. Investigator Weber stated that SunTrust Bank was notified by SunTrust Bank customer, [A.D], that he had received written correspondence from PayPal in reference to his PayPal account. [A.D.] stated he did not open a PayPal account and called PayPal to inquire about the account. He was informed that money was transferred out of his SunTrust account to a PayPal account in his name. SunTrust records revealed three unauthorized drafts totaling $33,217.50 were debited from [A.D.'s] SunTrust Bank account.

10.     Investigator Weber continued his investigation by contacting PayPal customer service to inquire about the fraudulent withdrawals from [A.D.'s] SunTrust Bank account. He stated PayPal informed him that funds were transferred from [A.D.'s] PayPal account to another PayPal account in the name of Jacinda James. Investigator Weber stated Jacinda James was previously employed as a teller at SunTrust Bank's East 3rd Street Branch

in Chattanooga, Tennessee. Investigator Weber stated that while talking with PayPal Loss Prevention about [A.D.'s] PayPal account, PayPal discovered funds were also transferred from Shaun Kidd's PayPal account to Jacinda James' PayPal account. PayPal also discovered that Shaun Kidd's account received funds from another SunTrust Bank customer, [M.S.'s] (account number _____). Investigator Weber stated further investigation into [M.S.'s] account revealed six unauthorized ACH drafts totaling $65,000 were debited out of [M.S.'s] account.

11.     Investigator Weber interviewed Jacinda James on February 18, 2009, regarding her involvement with the unauthorized transactions from [A.D.'s and M.S.'s] SunTrust accounts. James told Investigator Weber that Shaun Kidd was her boyfriend and, in the summer of 2008, Kidd asked her to get him [M.S.'s] account information. James admitted to making copies of [M.S.'s] account information and providing Kidd with the two PayPal verification deposit amounts into [M.S.'s] account. Investigator Weber stated James also admitted to providing Kidd with account balance information and PayPal verification deposit amounts for [A.D.'s] SunTrust Bank account. James' employment at SunTrust Bank was terminated on February 18, 2009.

12.     Further investigation by the case agent revealed that the defendant spent $1,656 of the fraudulently obtained funds on repair to his 1995 BMW at Eurasian Auto and $1,048.75 on four new tires at Goodyear Auto Service. The total loss in this case is $98,217.50. This amount is the sum of the two amounts of unauthorized withdrawals from [A.D.'s and M.S.'s] SunTrust Bank accounts: $65,000 and 33,217.50.

13.     On May 26, 2010, Special Agent Akers interviewed the defendant at the Hamilton County Jail. Kidd acknowledged and waived his rights, and agreed to speak with Agent Akers. He stated he was previously employed at Taylor Funeral Home in Chattanooga, Tennessee. He stated that, while he was employed at the funeral home, he met [A.D. and M.S.]. [A.D. and M.S.] came into the funeral home and made arrangements for a family member. Kidd stated he thought [A.D. and M.S.] appeared to "have lots of money." He stated that [A.D. and M.S.] are elderly and he thought they would be less likely to check their bank account balances than most people. Kidd stated he knew [A.D. and M.S.] banked at SunTrust Bank because they paid the funeral home with SunTrust Bank checks. Kidd stated he asked his friend, Adam McGowan, who works at Church Koinonia Federal Credit Union, what information he would need to open a PayPal account using another person's bank account. Kidd stated McGowan told him that he would need to know the original test deposit amounts that PayPal sends to the designated bank account linked to the PayPal account.

14. Kidd went on to state that he met Jacinda James at SunTrust Bank located on 3rd Street in Chattanooga while depositing money for the funeral home. He stated he thought he could convince James to give him information about [A.D.'s and M.S.'s] accounts if he began to date her. Kidd stated that after he dated James for a few weeks he gained her trust and asked that she give him the two test deposit amounts deposited into [A.D.'s and M.S.'s] SunTrust Bank accounts from PayPal. Kidd stated once James gave him the initial PayPal deposit amounts, he began withdrawing money from their bank accounts via PayPal and depositing the money into his PayPal account. Kidd stated he set up a PayPal account in his own name just to withdraw the money from [A.D.'s and M.S.'s] accounts. He also stated he set up a PayPal account in [A.D.s and M.S.'s] names and that they never authorized him to set up PayPal accounts nor have access to their SunTrust accounts.

15. Kidd stated that PayPal locked his account out after making too many large withdrawals from [M.S.'s] account and depositing the money into his own account. He stated once PayPal locked his account, he asked James if he could use her PayPal account. He stated James allowed him to use her account. He stated that he did not think James knew that he was using her PayPal account to illegally withdraw money from [M.S.'s] SunTrust account. He stated that he transferred money from [M.S.'s] SunTrust account into James' PayPal account and frequently gave James money from the illegal transfers. Kidd recalled at least two trips where he took James and her children on vacation using funds withdrawn from [A.D.'s and M.S.'s] accounts. He stated he used the illegal funds to pay for vacations to Fall Creek Falls State Park and to Gatlinburg, Tennessee. Kidd stated he also used some of the illegal funds to pay Adam McGowan for telling him when he received payments into his Church Koinonia Credit Union account from PayPal. He stated he used some of the illegally obtained funds to pay for his father's funeral and to pay for maintenance on a BMW that he owned at the time.

16. According to eBay/PayPal Investigator Will Kong, the amount of loss to PayPal is $75,850.49. One of the transactions was stopped. Otherwise, the amount of loss would be higher. SunTrust Bank is not owed any money because PayPal absorbed the loss and reimbursed SunTrust Bank.

(PSR, at 4-6).

IV.   ANALYSIS

The Court discerns Kidd raises one claim against the government, two claims against the

7

Court, and one factually unsupported ineffective assistance of counsel claim (with four subparts) in his § 2255 motion. The Court will address the claims in the order in which Kidd raises them.

### A.      Claim Against the Government

In his first claim, Kidd alleges: "The U.S. Attorney totally disregarded the 2010 Sentencing Guideline an [sic] got creative with the Federal Guideline Sentence Tabel [sic] which should have not been allowed. He must not profit from his illegal feelings. But, yet only apply the true standards from the Supreme Court years ago." (Criminal Court File No. 40).

This claim fails for several reasons. First, to the extent this is even a proper claim, it is procedurally defaulted as any claim challenging the prosecutor's arguments should have been raised on direct review, and absent any claim of cause and prejudice or miscarriage of justice to excuse his procedural default, Kidd is not entitled to have this claim reviewed in this collateral proceeding. Motions filed under 28 U.S.C. § 2255 are not substitutes for appeals. *See Reed v. Farley*, 512 U.S. 339, 354 (1994). Because Kidd failed to raise his prosecutorial misconduct claim at the district court level or on direct appeal, his claim is procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Therefore, unless Kidd can show both cause, excusing his double procedural default, (i.e., failing to raise the prosecutorial misconduct issue during his criminal proceedings and on direct appeal), and actual prejudice resulting from the alleged prosecutorial misconduct to excuse his failure to raise the issue during criminal proceedings and on direct appeal, or that a constitutional error "has probably resulted in the conviction of one who is actually innocent[,]" he is barred from raising the claim here. *Id*. To show actual innocence he must show that he is factually innocence, mere legal insufficiency of the evidence is not enough. *Bousley*, 523 U.S. at 623. Kidd does not allege, much less demonstrate, cause and prejudice or actual innocence to excuse his procedural

8

default.

Second, to the extent Kidd is challenging his 60 month sentence, he did so on direct review and the Sixth Circuit affirmed the Court's upward departure under USSG § 4A1.3 (criminal history) and concluded his sentence was reasonable. And finally, as explained below, Kidd's claim, as the Court understands it, does not attack his conviction or sentence or allege a constitutional violation, but rather attacks the prosecutor's arguments during the sentencing hearing.

Contrary to Kidd's claim, the 2010 version of the United States Guidelines Manual was used to calculate Kidd's sentence (PSR, at 6, 20). The Court presumes Kidd is attacking the Assistant United States Attorney's ("AUSA") argument that an upward departure was warranted in Kidd's case because criminal history was under-represented. In support of his argument, the AUSA explained he "got a little creative with the guidelines . . . to give the Court some frame of reference for where exactly the government believe[d] that the defendant should be sentenced." (Criminal Court File No. 31, at 14). Because Kidd had so many convictions, the AUSA "came up with a whole new kind of mythical criminal history category which was about two-and-a-half times greater than the category six. And then . . . tried to include a range . . . about two-and-a-half times greater than the resulting range." (Criminal Court File No. 31, at 14). On that basis, the AUSA came up with a criminal history category of 16 and an estimated guideline range of 84 to 105 months.

The government's creativity in making its argument for an upward departure did not violate Kidd's constitutional rights. Notably, the Court did not base Kidd's sentence on the government's creativity, as it sentenced Kidd to 60 months, a sentence substantially less than the government's proposed 84 to 105 month sentence. Kidd's sentence was based on the Court's consideration of the PSI report which noted an upward departure pursuant to USSG § 4A1.3 may be warranted because

9

Kidd's criminal history included more than three times as many points needed for a criminal history category of VI, indicated a high risk of recidivism, and overshadowed the criminal history of other criminal defendants with a criminal history category of VI. The Court considered all of these factors along with Kidd's complete history and the 18 U.S.C. § 3553 sentencing factors before imposing a 60 month sentence of imprisonment (Criminal Court File No. 31, pp. 28-30, Judgment Proceeding Transcript).

Consequently, even assuming the government disregarded the 2010 USSG and regardless of their creativity, there was no constitutional violation as the Court properly sentenced Kidd and, as previously noted, the Sixth Circuit concluded on appeal, Kidd's sixty month sentence "is . . . substantively reasonable." (Criminal Court File No. 36, p. 5).

Accordingly, because Kidd has not established his "sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" 28 U.S.C. § 2255, relief will be **DENIED** on this claim.

### B.      Alleged Court Error

The Court is unable to determine what Kidd is alleging in his second claim. Kidd claims "[r]etroactive enhancement, courts not allowed to sentence people to imprisonment to deter correction or rehabilitation." (Criminal Court File No. 40). Kidd's claim is completely nonsensical, indecipherable, unintelligible, and does not substantially comply with Rule 2 of the Rules Governing

Section 2255 Proceedings for the United States District Courts, which requires each ground for relief to be specifically identified and factually supported.

To the extent Kidd is attempting to attack his sentence, he did so on direct appeal and ordinarily, issues that were litigated and rejected on direct appeal cannot be relitigated in collateral proceedings absent a change in the law. *United States v. Frady*, 456 U.S. at 167-68. The Sixth Circuit's conclusion that Kidd's sentence is reasonable is binding on this Court. Finally, Kidd has failed to provide any factual support to his presumed allegation that his sentence is illegal because it deters him from "correction or rehabilitation."

Accordingly, because the Sixth Circuit has previously determined Kidd's sentence is reasonable and alternatively, because he has failed to adequately plead this claim in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, relief will be **DENIED**.

### C.      Ineffective Assistance of Counsel

In his third claim, Kidd contends counsel was ineffective for failing to: (1) request a mental evaluation of Kidd, (2) inform him of the status of his case, (3) include him in a secret meeting with the "D.A." and Judge, and (4) for misleading him. Contrary to the express directions of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, Kidd's claim does not state the facts supporting his four alleged grounds of ineffective assistance of counsel, and additionally, as explained below, he has failed to establish he suffered any prejudice. The Court will analyze the applicable law before addressing each allegation of ineffective assistance of counsel.

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish a claim of ineffective

assistance, a defendant must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial, rendering the outcome of the trial unreliable. *Id*. at 687-88.

With regard to plea proceedings, a defendant must show that but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir.1995). Under *Strickland,* review should be deferential and maintain a strong presumption in favor of finding counsel's conduct within the wide permissible range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

As an initial matter, the Court observes that Kidd has failed to meet the prejudice prong as to any of his claims because he does not allege that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. Notably, Kidd does not identify what relief he is seeking. Furthermore, as explained below, Kidd has failed to demonstrate counsel was ineffective.

### 1. *Mental Health Exam*

As the Court understands Kidd's claim, he alleges counsel was ineffective for failing to request a mental evaluation. Even assuming counsel was deficient for failing to request a mental evaluation, Kidd does not provide any factual support explaining how counsel's failure to request a mental evaluation prejudiced him. Kidd does not allege what a mental evaluation would have

12

revealed, how it would have assisted him in these criminal proceedings, or how it would have altered the outcome of his sentencing.

Notably, the Court was well aware of Kidd's mental health as the PSR informed the Court of Kidd's mental health issues. Although the Court observes the PSR indicates Kidd had been diagnosed with ADHD, Depression, and as bipolar, and that he had been taking Zoloft since being incarcerated, there is nothing in the record to indicate he was incompetent or insane at the time he committed the crime or during his criminal proceedings. In addition, there is nothing in the mental and emotional history portion of the PSR which suggests a downward departure for diminished capacity would have been appropriate.

The record indicates Kidd made a knowing and voluntary waiver of indictment; consented to proceed before the magistrate judge who found him fully capable and competent to enter an informed, knowing, and voluntary plea; and understood what he was charged with and the rights he waived (Criminal Court File No. 10, R & R). Consequently, because Kidd has not established that counsel's failure to request a mental health exam prejudiced him, no relief is warranted. Accordingly, § 2255 relief will be **DENIED** on this allegation of ineffectiveness.

2. *Failure to Keep Client Informed*

Next Kidd claims counsel failed to keep him informed of the status of his case. The information in this case was issued on August 10, 2010, and Kidd signed the Agreed Factual Basis for his guilty plea on that date (Criminal Court File Nos. 1, 2). Kidd appeared and entered a guilty plea on September 27, 2010, and at that time his sentencing hearing was scheduled and subsequently

conducted on February 7, 2011 (Criminal Court File Nos. 7, 18 (Minute Entries for each

13

proceeding).    The Magistrate Judge's Report and Recommendation reflects Kidd made a knowing

and voluntary plea.  The record further reflects Kidd appeared at all scheduled court dates, and when

the Court inquired as to whether he had an opportunity to review his PSR and discuss it with counsel

he stated he had.  In addition, when the Court provided Kidd with the opportunity to speak before

imposing sentence, he did so (Criminal Court File No. 31, at 24-27).  However, at no time during

the proceedings did he indicate he was uninformed about his case.  Because Kidd has failed to

provide any factual support for this assertion, he has failed to set forth a legally sufficient claim for

relief.  Even assuming counsel performed deficiently in this regard, Kidd has not demonstrated he

suffered any prejudice.

Accordingly, because Kidd's factually unsupported claim counsel was ineffective for failing

to keep him informed of the status of his case does not state a viable claim for relief in this federal

proceeding, it will be **DENIED**.

### 3.    *Secret Meeting with "D.A.""and Judge*

In this claim, Kidd contends counsel had a secret meeting with the "D.A." and Judge.  Once

again, Kidd does not provide any factual support for this assertion of ineffective assistance of

counsel. The Court presumes Kidd is making reference to some meeting relating to his state case

which counsel referenced during his federal sentencing hearing.  During his sentencing hearing,

prior to imposition of the sentence, counsel asked the Court to consider that Kidd's state probation

was recently revoked and those two sentences were ordered to run consecutive, although a motion

had been filed asking that they run concurrent (Criminal Court File No. 31, at 12-24).  The Court,

therefore, presumes Kidd is alleging counsel met with a state assistant district attorney and judge

as there is no "D.A." in federal court.  Kidd has submitted absolutely no proof of this alleged secret

14

meeting.  Nevertheless, even presuming there was some meeting, Kidd has not alleged, much less

demonstrated, he suffered any prejudice in his federal proceedings as a result of this alleged meeting.

Therefore, once again, Kidd's failure to set forth factual support for his claim has resulted

in a legally insufficient claim, as he has failed to demonstrate counsel performed deficiently and that

he suffered any prejudice.  Accordingly, this claim of ineffective assistance of counsel, which is

factually insufficient to state a claim for relief, will be summarily **DENIED** for failure to comply

with Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District

Courts.

4. *Misleading Facts*

Finally, Kidd claims counsel was ineffective for telling him misleading facts.  Kidd does not

identify the misleading facts, thus the Court is unable to determine what alleged misrepresentations

were made by counsel to him.  Kidd's failure to identify the misrepresentations or how the alleged

misrepresentations prejudiced him, results in this claim being unsubstantiated and factually lacking

in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States

District Courts.  Accordingly, this claim lacks merit and relief will be **DENIED**.

**D.     Alleged Bias of Court**

In his final claim, Kidd submits a rambling, nonsensical diatribe of his general feelings about

his case that seemingly attacks the Court's sentencing of him.  Kidd alleges,

> Court totally got prejudice with the case itself.  By all means.  Doing as they pleased.
> Totally disregarding all Court rulings held by higher courts years ago to punish those
> who might end up on the wrong side of the law.  Travesty of Justice.  We might as
> well just through [sic] the U.S. Constitution in the garbage if we going [sic] to get
> creative as we go along with court proceedings is[sic] my true mindset about the case
> in general.

(Criminal Court File No. 40).  Nowhere in this rambling diatribe has Kidd made any allegation

15

entitling him to § 2255 relief and therefore, his tirade against the Court's handling of his criminal case deserves no consideration as he has failed to raise a viable § 2255 claim. This claim simply does not state any meritorious claim for relief.

The Rules Governing Section 2255 Proceedings for the United States District Courts envision a system of simplified pleadings that give notice of the general claims asserted, as the rules require the movant to specify all grounds for relief and state the facts supporting each ground, thus permitting the government to prepare a reply so that the Court can narrow the issues to be litigated and quickly dispose of sham claims. See Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Claims which ramble, accuse, and condemn, and contain circuitous diatribes do not comport with the goals of these rules. This claim conforms with neither the § 2255 form motion nor the intention of the Rules Governing Section 2255 Proceedings for the United States District Courts as it does not set forth the ground for relief and supporting factual basis.

Accordingly, because under even the most liberal standards Kidd's claim fails to raise a viable § 2255 claim for relief, it will be **DENIED**.

## V. CONCLUSION

Because Kidd has not established his sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, § 2255 relief is not warranted. 28 U.S.C. § 2255 (a).

For the reasons set forth above, the Court concludes Kidd is not entitled to any relief under 28 U.S.C. §2255 as his conviction and sentence are not in violation of the Constitution or laws of

16

the United States.

A separate judgment will enter **DENYING** Kidd's §2255 motion (Criminal Court File No.

40) and his *in forma pauperis* application (Criminal Court File No. 41).


**/s/**

**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

17